IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| HARMONY V. PEDDY,<br><br>　　　Plaintiff,<br><br>v.<br><br>AARON'S, INC.,<br><br>　　　Defendant. | CIVIL ACTION FILE NO.: 18-01625<br><br>SECTION "R"<br><br>JUDGE: SARAH S. VANCE<br><br>MAGISTRATE JUDGE: JOSEPH C. WILKINSON, JR. |

**DEFENDANT'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR JUDGMENT ON THE PLEADINGS**

Plaintiff/Counterclaim Defendant Harmony V. Peddy ("Plaintiff") filed a Petition for Damages ("Petition") alleging various claims against Defendant/Counterclaimant Aaron's, Inc. ("Defendant" or "Aaron's") arising from a 2009 workplace injury. Aaron's filed counterclaims alleging claims for breach of contract and indemnification. The pleadings filed to date demonstrate, on their face, that Plaintiff settled the underlying injury claim and executed a release and indemnification agreement whereby she agreed to not only release Aaron's from liability for any additional claims arising from that workplace injury, but also indemnify Aaron's from any such actions. Pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, Aaron's respectfully requests that the Court grant its Motion for Judgment on the Pleadings, dismiss Plaintiff's Petition with prejudice because the pleadings show that Plaintiff has failed to state a claim upon which relief can be granted, and grant Aaron's counterclaims for breach of contract and indemnification of its reasonable attorneys' fees and expenses incurred in defending against this action.

**I.　　STATEMENT OF UNDISPUTED FACTS AND PROCEDURAL HISTORY**

　　**A.　　Factual Background**

Aaron's hired Plaintiff on or around August 22, 2000 and, most recently, she worked as a

Divisional Sales Manager.  (Dkt. 1, p. 6, ¶ 9.)  Plaintiff suffered a workplace head injury in 2007, but did not suffer any "residual cognitive complaints," headaches or other medical problems as a result of that injury.  (Dkt. 1, p. 6, ¶ 10; Dkt. 15-1, p. 20.)  On June 5, 2009, Plaintiff suffered another head injury while at work ("2009 Injury").  (Dkt. 1, p. 6, ¶ 11; Dkt. 14-1, p. 2, ¶ 1.)  Thereafter, she was diagnosed with various medical conditions resulting from that injury, including post-concussive syndrome, anxiety disorder and severe migraines.  (Dkt. 1, p. 6, ¶ 11; Dkt. 15-1, p. 33.)

As a result of these medical conditions, Plaintiff suffered panic attacks; mild cognitive deficits, including dyscalculia (difficulty with math calculations); and reduced processing speed, working memory, and executive functioning.  (Dkt. 15-1, p. 33.)  Aaron's reasonably accommodated Plaintiff's medical conditions by permitting her to delegate computer tasks to others, allowing her extra time to complete certain tasks, limiting the time she spent driving, and allowing her time off for medical treatments and therapies.  (Dkt. 1, p. 6, ¶ 12.)  After Plaintiff began reporting to a new supervisor on or about May 7, 2015, she felt that he did not sufficiently accommodate her medical conditions.  (Dkt. 1, pp. 6-7, ¶¶ 12-14.)  Thereafter, Plaintiff submitted an undated note from her physician stating that she was "completely disabled due to severe debilitating migraines and associated cognitive difficulties" and "recommend[ing] that she refrain from work."  (Dkt. 15-1, p. 45.)  Plaintiff ceased working on or about March 24, 2016. (Dkt. 1, p. 7, ¶ 15.)

    **B.**    **Procedural Background**

Plaintiff filed a disability discrimination and retaliation charge with the Equal Employment Opportunity Commission ("EEOC") and Louisiana Commission on Human Rights on March 17, 2017, wherein she alleged she had been constructively discharged.  (Dkt. 1, p. 5, ¶ 3; p. 14.)  The

EEOC dismissed Plaintiff's charge with a no cause finding in favor of Aaron's on November 13, 2017. (Dkt. 15-1, p. 2.) Thereafter, Plaintiff filed the instant action in the 22nd Judicial District Court, St. Tammany Parrish, on January 8, 2018. (Dkt. 1, pp. 5-15.) Plaintiff served Aaron's with a copy of the state court action on February 1, 2018. (Dkt. 1, p. 2, ¶ 5.) Aaron's removed the action to this Court on February 16, 2018. (Dkt. 1, pp. 1-3.)

On September 12, 2018, Aaron's filed an Amended Answer and Affirmative Defenses and Counterclaims ("Counterclaims"). (Dkt. 14.) Plaintiff filed an untimely response to the Counterclaims on October 9, 2018 (the "Answer"), wherein she failed to either admit or deny the individual allegations in the Counterclaims[1] and, therefore, those allegations are automatically deemed admitted. (Dkt. 15.) *See* discussion in Section II(A) *infra*.

C.  **Workers' Compensation Settlement and Release Of All Claims**

On January 9, 2018, the day after she filed this action but before she served it on Aaron's, Plaintiff and her counsel Laurie Maschek, along with counsel for Aaron's and its Workers' Compensation carrier, filed a Joint Petition for Settlement of Workers' Compensation Claim ("Joint Petition") related to the settlement of all claims arising from Plaintiff's 2009 Injury. (Dkt. 14, p. 10, ¶¶ 5-6; Dkt 14-1, pp. 2-11.) The Joint Petition was approved and Plaintiff's claims arising from her 2009 Injury were dismissed with prejudice on January 10, 2018. (Dkt. 14, p. 11, ¶¶ 12-13, 15; Dkt 14-1, pp. 15, 17-18.)

---

[1] Although Plaintiff did admit in paragraph 6 of her Answer that she entered into a settlement regarding her workers' compensation claims, that admission was not directly responsive to the allegations in paragraph 6 of the Counterclaims, which alleged that the Joint Petition filed by the parties related to a settlement of the claims arising from the 2009 Injury. (Dkt. 14, p. 10, ¶ 6; Dkt. 15, p. 2, ¶ 6.) Similarly, in paragraph 10 of her Answer, Plaintiff denied "any allegations of breach of contract," but that denial was not responsive to the allegations in paragraph 10 of the Counterclaims, which related to the contents of a Resignation Agreement signed by Plaintiff. (Dkt. 14, p. 11, ¶ 10; Dkt. 15, p. 2, ¶ 10.) *See* discussion in Section I(C) *infra* regarding Resignation Agreement.

As consideration for receiving a settlement payment for her workers' compensation claims, Plaintiff executed a Receipt, Release and Indemnity Agreement ("Release Agreement") on January 30, 2018, whereby she released Aarons from:

> …**all liability of any nature whatsoever, whether past, present or future**, including any and all medical and physical therapy charges, wrongful termination from employment, retaliatory discharge, penalties, punitive damages, interest and attorney fees, and also **including, but not limited to, all actions arising in damages, tort, worker's compensation, including all claims arising under . . . the laws of Louisiana . . . or the law of the United States, . . . [or] the Louisiana tort law, as a result of the injuries which occurred on or about June 5, 2009**...

(Dkt. 14, p. 12, ¶ 19; Dkt. 14-1, p. 20) (emphasis added).

Pursuant to the Release Agreement, Plaintiff also "expressly agree[d] **to indemnify, hold harmless and defend Aarons Inc. . . . from all actions**, claims, cross-claims, third party complaints, counter-claims, reconventional demands, interventions and any other legal or administrative action by any person, firm or corporation **that has arisen or may arise, directly or indirectly out of the injuries herein described due to the accident of June 5, 2009**." (Emphasis added).  (Dkt. 14, p. 12, ¶ 20; Dkt. 14-2, p. 21.)

Plaintiff further agreed that "I do hereby covenant and agree that **I will never hereafter make or file any claim or lawsuit against said Aarons Inc..** . . for any matter, damage, injury, compensation benefit, medical benefit or any other right or debt **arising out of or resulting directly or indirectly from the accident of June 5, 2009** and/or the resulting compensation claim." (Emphasis added).  (Dkt. 14, p. 13, ¶ 21; Dkt. 14-1, p. 22.)

As discussed below, because the claims in the instant action arose from Plaintiff's 2009 Injury and Plaintiff previously released Aaron's from all liability arising from such claims, the instant action should be dismissed with prejudice.  Further, because Plaintiff agreed to indemnify Aaron's from any and all actions, claims, cross-claims, etc., arising, either directly or indirectly,

from her 2009 Injury, Aaron's should be awarded its attorneys' fees, costs of litigation, and related expenses in this action.

## II.     ARGUMENT AND CITATION OF AUTHORITIES

### A.     Aaron's Counterclaim Allegations Are Deemed Admitted

A party must serve an answer to a counterclaim within 21 days after being served with a pleading that contains a counterclaim. Fed. R. Civ. P. 12(a)(1)(B). Aaron's filed its Counterclaims on September 12, 2018. (Dkt. 14.) Without even requesting an extension of the response deadline or otherwise seeking leave of court, Plaintiff filed her Answer to the Counterclaims ("Answer") on October 9, 2018, which was six days after her 21-day response deadline expired. (Dkt. 15.)

Moreover, rather than admitting or denying each of the 47 allegations in the Counterclaims, Plaintiff merely pled eleven factual allegations, three of which had been included in her original Petition. (Dkt. 1 ¶¶ 2-3, 15; Dkt. 15, ¶¶ 2-3, 5.) Where a responsive pleading is required, an allegation, other than one relating to damages, is deemed admitted unless it is specifically denied in the responsive pleading. Fed. R. Civ. P. 8(b)(6). *See also, Campbell Harrison & Dagley, L.L.P. v. PBL Multi-Strategy Fund, L.P.*, 2018 U.S. App. LEXIS 19280, *20-21 (5th Cir. July 13, 2018) ("The [] effect of failing to answer is that the allegations in the complaint (or counterclaim) are deemed admitted."); *Hamilton v. Wilkinson*, 2010 U.S. Dist. LEXIS 31924, *2 (W. D. La. March 17, 2010) (court deemed all well-pleaded complaint allegations admitted where defendant failed to file an answer even though he failed to do so because he did not realize he was required to file an answer).

Because Plaintiff failed to admit or deny each of Aaron's well-pleaded Counterclaim allegations, each of those allegations are deemed admitted, except for those relating to damages. Fed. R. Civ. P. 8(b)(6). Accordingly, paragraphs 1-37, 39-44, and 47 of the Counterclaims are deemed admitted. (Dkt. 14.)

01316255-3

### B.     Judgment on the Pleadings Is Warranted

As the following discussion demonstrates, the pleadings establish, on their face, that Plaintiff has failed to state a claim upon which relief can be granted because she previously released Aaron's from liability for all of the claims in her Petition by signing the Release Agreement.  The pleadings further establish that Plaintiff breached the Release Agreement by filing the Petition and, therefore, Aaron's is entitled to specific performance under that Agreement, including the indemnification of its attorney's fees and other costs incurred as a result of this action.

#### (1)     Standard Of Review

Rule 12(c) of the Federal Rules of Civil Procedure provides that "(a)fter the pleadings are closed[2]—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c).  As this Court has explained:

> In determining a motion for judgment on the pleadings, the Court must look only to the pleadings, construing such pleadings liberally and accepting all allegations contained therein as true. A motion for judgment on the pleadings should only be granted where it appears certain that the party opposing the motion cannot prove any set of facts that would entitle it to relief. Judgment on the pleadings is appropriate where material facts are not disputed and the only issues are questions of law.

*Jones v. Bd. of Supervisors of the Univ. of La. Sys.*, 2015 U.S. Dist. LEXIS 154558, *5-6 (E.D. La Nov. 15, 2015) (citations omitted).

"The standard for dismissal under Rule 12(c) is the same as that for dismissal for failure to state a claim under Rule 12(b)(6)." *Duncan v. United Servs. Auto. Ass'n Ins.*, 2016 U.S. Dist.

---

[2] "Rule 7(a) provides that the pleadings are closed upon the filing of a complaint and an answer (absent a court-ordered reply), unless a counterclaim, cross-claim, or third-party claim is interposed, in which event the filing of a reply to a counterclaim, cross-claim answer, or third-party answer normally will mark the close of the pleadings." *GE Oil & Gas, Inc. v. Turbine Generation Servs., L.L.C.*, 2015 U.S. Dist. LEXIS 16912, *11-12 (W.D. La. Feb. 11, 2015).

LEXIS 96008, *5 fn. 15 (E.D. La July 22, 2016) (citations omitted). Therefore, although "the court must accept all allegations in a complaint as true(,) ... the complaint must contain either direct allegations on every material point necessary to sustain a recovery . . . or contain allegations from which an inference may be fairly drawn that evidence on these material points will be introduced at trial." *Yor-Wic Constr. Co. v. Eng'g Design Techs., Inc.*, 2018 U.S. Dist. LEXIS 115927, *6 (W.D. La. July 11, 2018) (citations omitted). Further, "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." (citations omitted). "Courts considering a motion to dismiss under Rule 12(c) are only obligated to allow those complaints that are facially plausible under the *Iqbal*[3/] and *Twombly*[4/] standard to survive such a motion." *Id*. (*citing Iqbal,* 556 U.S. at 678-79, 129 S. Ct. at 1949, *Twombly,* 550 U.S. at 555, 127 S. Ct. at 1965).

Applying this standard to the claims in Plaintiff's Petition requires the dismissal of those claims. Similarly, this standard requires that the relief Aaron's seeks in its Counterclaims be granted.

> (2) <u>Plaintiff's Petition Failed to State A Claim Upon Which Relief Can Be Granted Because She Previously Released All Claims Arising From Her 2009 Injury.</u>

---

[3/] "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868, 884 (2009).

[4/] "[A] plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do ... Factual allegations must be enough to raise a right to relief above the speculative level..." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56, 127 S. Ct. 1955, 1965, 167 L.Ed.2d 929, 940 (2007).

In exchange for the payment of the compromise settlement of Plaintiff's workers' compensation claim which arose from her 2009 Injury, and on advice of her current counsel, Plaintiff executed a Release Agreement whereby she voluntarily and knowingly released Aaron's from "all liability of any nature whatsoever, whether past, present or future, including … wrongful termination from employment, retaliatory discharge, … punitive damages, interest and attorney fees, … all actions arising in damages, tort, … including all claims arising under . . . the laws of Louisiana . . . or the law of the United States, . . . [or] the Louisiana tort law, as a result of the injuries which occurred on or about June 5, 2009…" (Dkt. 14, p. 12, ¶ 19; Dkt. 14-1, p. 20.)  If this language left any doubt about the scope of the release, which it does not, Plaintiff further agreed that she was "completely giving up and discharging any and all rights that [she] ha[s] or might hereafter have against Aaron's … arising out of the accident on June 5, 2009." (Dkt. 14-1, p. 21.)  Finally, she agreed that she would never file any claim or lawsuit against Aarons arising out of or resulting directly or indirectly from the accident of June 5, 2009.  (Dkt. 14, p. 13, ¶ 21; Dkt. 14-1, p. 22.)

Despite releasing Aaron's from liability for all possible claims arising out of her 2009 Injury, Plaintiff filed the instant action on January 8, 2018, wherein she alleged a host of claims against Aaron's stemming directly from her 2009 Injury.  More specifically, Plaintiff alleged that Aaron's violated the Americans with Disabilities Act of 1990 ("ADA"); 49 U.S.C. § 12101, *et seq.*; La. R.S. 23:302 *et seq.*; and 42 U.S.C. § 1981(a) by allegedly subjecting her to a hostile work environment and discriminating against her on the basis of her disability and by failing to accommodate her disability.  (Dkt. 1-1, ¶¶ 16-18.)  Plaintiff also alleged intentional infliction of emotional distress by Aaron's.  (Dkt. 1-1, ¶ 19.)

Her Petition in this case makes it clear that her alleged disabilities and, by extension, her claims, are the direct result of her 2009 Injury. For instance, Plaintiff alleged that on June 5, 2009, "a 50 pound beam fell on her head" and that she was "subsequently diagnosed with Post Concussive Syndrome, with anrilty [sic], migraine headaches, neurocognitive disorder, dyscalculia, anxiety and black-outs, causing permanent disabilities." (Dkt. 1, p. 6, ¶ 11). She further alleged that:

> Subsequent to the 2009 injury, Aaron's, Inc. accommodated Plaintiff's disabilities, permitting her to delegate computer tasks and allowing her extra time to complete other tasks, limiting the time she spent driving, as well as permitting her time to seek medical treatments and therapies. This accommodation worked well for all parties for several years, until Justin Hafer was hired to be Plaintiff's immediate supervisor.

(Dkt. 1, p. 7, ¶ 12.)

Plaintiff then alleged that although Mr. Hafer initially agreed to work within her constraints once she explained her disabilities and medical conditions to him, he eventually began complaining about her work. (Dkt. 1, p. 7, ¶ 13.) She further alleged that "[w]ithout the initial accommodations being continued under Mr. Hafer's supervision, Plaintiff's work product suffered and she experienced an increase in anxiety attacks and migraine headaches." (Dkt. 1, p. 7, ¶ 14.) Plaintiff also alleged that despite "follow[ing] all company policies regarding her ongoing disabilities and the reporting requirements of Aaron's," she was discharged in violation of the ADA on March 24, 2016. (Dkt. 1, p. 7, ¶ 15.)

In support of her ADA claim, Plaintiff alleged that she "has been personally subjected to and witnessed a hostile work environment in which she was expected to perform work tasks which she could not, due to her disabilities, as her new supervisor refused to accommodate her as had been previously done." (Dkt. 1, p. 7, ¶ 16.) Plaintiff also alleged that she "was singled out and intentionally discriminated against by the defendant because of [her] disabilities in violation of

[the ADA], 49 U.S.C. § 12101, *et seq*.; La. R.S. 23:302 *et seq*.; and 42 U.S.C. § 1981(a) and she "suffered intentional infliction of emotional distress…constituting continuing intentional tort." (Dkt. 1, p. 8, ¶¶ 17, 19.) Finally, Plaintiff alleged that she is entitled to attorneys' fees and punitive damages. (Dkt. 1, p. 9, ¶¶ 21-22.)

On its face, therefore, it is irrefutable that Plaintiff's Petition establishes that all of her claims arose out of or are related to the disabilities she purportedly developed as a result of her 2009 Injury. Similarly, Aaron's Counterclaims establish that Plaintiff agreed to release Aaron's from liability for any such claims in exchange for the payments made to settle her workers' compensation claim.[5/] (Dkt. 14-1, p. 20.) Because Plaintiff received the settlement payment and her entitlement to that payment was conditioned upon her signing the Release Agreement, that agreement is binding and enforceable. *See Garcia v. LumaCorp Inc.*, 429 F.3d 549, 553, 556 (5th Cir. 2005) (affirming district court's grant of summary judgment in favor of employer on various employment claims, including intentional infliction of emotional distress, discrimination under 42 U.S.C. § 1981, and wrongful termination, where plaintiff had previously signed a general release waiving all claims arising from his workplace injuries in exchange for a settlement payment related to those injuries). Although Plaintiff alleged in her Answer to the Counterclaims that she believed she had not released her right to pursue her claims in this action, her mistaken belief, even if based upon advice of counsel, does not affect the enforceability of the Release Agreement. *See Green v. Fairmont Hotel Mgmt. Co.*, 1996 U.S. App. LEXIS 43336, *5 (5th Cir. 1996) (holding that "district court correctly concluded that the Release signed by [plaintiff] precluded her suit" and

---

[5/] As discussed in Section II(A) *supra*, the allegations in Aaron's Counterclaims are deemed admitted because Plaintiff failed to either admit or deny those allegations.

plaintiff's "reliance on the erroneous advice of the attorney [] does not affect the enforceability of the Release" she signed waiving her right to sue her employer).

Accordingly, the Release Agreement precludes Plaintiff's claims in this action. Therefore, Aaron's breach of contract counterclaim should be granted and Plaintiff's claims should be dismissed in their entirety.

> (3) Plaintiff Is Contractually Obligated To Indemnify And Defend Aaron's Against The Claims In This Action.

The pleadings demonstrate that Plaintiff expressly agreed to indemnify, hold harmless and defend Aaron's from all actions, claims, etc. arising, directly or indirectly from her 2009 Injury when she executed the Release Agreement in exchange for the payments made to settle her workers' compensation claim. (Dkt. 14, p. 12, ¶ 20; Dkt. 14-1, p. 21.)

As discussed above, the Release Agreement is valid and enforceable. *See Garcia*, 429 F.3d at 556; *Green v. Fairmont Hotel Mgmt. Co.*, 1996 U.S. App. LEXIS 43336, *5. Because the Petition makes it clear on its face that the claims in this action clearly arose from Plaintiff's 2009 Injury, Plaintiff's indemnification and defense obligations under the Release Agreement are triggered. Accordingly, Aaron's respectfully requests that the Court find that Plaintiff must indemnify Aaron's for its reasonable attorneys' fees and costs incurred in defending against this action.

### III. CONCLUSION

For the reasons set forth above, Aaron's respectfully requests that the Court grant its Motion for Judgment on the Pleadings and enter an Order dismissing Plaintiff's Petition in its entirety and awarding Aaron's its reasonable attorneys' fees and costs incurred in defending against this action.

Respectfully submitted, this 2nd day of November 2018.

01316255-3

/s/Alisa P. Cleek
Alisa P. Cleek
Georgia Bar No. 581063
of
TAYLOR ENGLISH DUMA LLP
1600 Parkwood Circle, Suite 200
Atlanta, Georgia 30339
Telephone: (678) 426-4624
Facsimile: (770) 434-7376
Email: acleek@taylorenglish.com
**\*\*Trial Attorney\*\***

AND

Kathryn M. Knight, LA Bar No. 28641
Leon H. Whitten, LA Bar No. 36724
of
STONE PIGMAN WALTHER
WITTMANN L.L.C.
909 Poydras Street, Suite 3150
New Orleans, Louisiana 70112-4042
(504) 593-0915 Telephone
(504) 596-0915 Facsimile
Email: kknight@stonepigman.com
Email: lwhitten@stonepigman.com

Attorneys for Defendant Aaron's, Inc.

## CERTIFICATE OF SERVICE

I hereby certify that on this 2nd day of November 2018, a copy of the foregoing **DEFENDANT'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR JUDGMENT ON THE PLEADINGS** was filed electronically with the Clerk of Court using the CM/ECF system. Notice of this filing will be sent to each counsel of record by notice of electronic filing generated through the CM/ECF system, and/or by United States mail, facsimile, or e-mail for those counsel and unrepresented parties who are not participants in the CM/ECF system.

/s/Alisa P. Cleek
Alisa P. Cleek
Georgia Bar No. 581063

01316255-3