UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| HARMONY V. PEDDY | CIVIL ACTION |
| VERSUS | NO. 18-1625 |
| AARON'S INC. | SECTION "R" (2) |

## **ORDER AND REASONS**

Before the Court is defendant's motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c), on the grounds that plaintiff released defendant from any liability for her claims in a prior settlement agreement. The Court grants defendant's motion with respect to the claims plaintiff asserts against it and dismisses those claims with prejudice. The Court also grants the motion as it relates to defendant's counterclaim for breach of contract, but denies the motion as it relates to defendant's counterclaim for indemnification.

## **I. BACKGROUND**

This case arises out of allegations of workplace discrimination.[1] Plaintiff Harmony V. Peddy alleges that she was hired by defendant Aaron's

---

[1] R. Doc. 1-1.

Inc. on August 22, 2000, as a Divisional Sales Manager supervising over 100 stores owned and operated by defendant.[2] On June 5, 2009, a 50-pound beam allegedly fell on Peddy's head while she was working in defendant's store in New Iberia, Louisiana.[3] Peddy allegedly lost consciousness and sustained a severe concussion.[4] These injuries have allegedly caused her to suffer permanent disabilities.[5]

According to Peddy, after the June 5, 2009 accident, defendant at first accommodated her disabilities.[6] Defendant allegedly allowed her to delegate computer tasks and to take extra time to complete other tasks.[7] Defendant also allegedly limited the amount of time Peddy spent driving, and gave her time to seek medical treatment.[8] Peddy asserts that these accommodations "worked well" for a number of years after the incident, but that the accommodations ceased once nonparty Justin Hafer was hired as her immediate supervisor.[9] Hafer allegedly began to "complain[] that [Peddy] had not completed spreadsheets as directed."[10] Peddy alleges that once

---

[2] *Id.* at 4 ¶ 9.
[3] *Id.* ¶ 11.
[4] *Id.*
[5] *Id.*
[6] *Id.* at 5 ¶ 12.
[7] *Id.*
[8] *Id.*
[9] *Id.*
[10] *Id.* ¶ 13.

Hafer began to remove the accommodations that were previously in place, her work product suffered and she experienced increased anxiety attacks and migraine headaches.[11] Defendant allegedly discharged Peddy on March 24, 2016.[12]

On January 8, 2018, Peddy filed this lawsuit against defendant in state court.[13] Peddy asserts that defendant has discriminated against her on the basis of her disability, subjected her to a hostile work environment, and failed to accommodate her disability, in violation of the Americans with Disabilities Act (ADA), the Louisiana Employment Discrimination Law (LEDL), and 42 U.S.C. § 1981(a).[14] Peddy further asserts a state law claim for intentional infliction of emotional distress.[15] She seeks compensatory and punitive damages, as well as attorney's fees.[16]

On February 16, 2018, defendant removed the action to this Court and filed an answer to the complaint.[17] Defendant was granted leave to file an amended answer and counterclaim on September 12, 2018.[18] In its

---

[11] *Id.* ¶ 14.
[12] *Id.* ¶ 15.
[13] *See generally id.*
[14] *Id.* at 5-6 ¶¶ 16-17.
[15] *Id.* at 6 ¶ 19.
[16] *Id.* at 6-7 ¶¶ 20-22.
[17] R. Doc. 1; R. Doc. 3.
[18] R. Doc. 13; R. Doc. 14.

counterclaim, defendant asserts that on January 9, 2018, the parties executed a Joint Petition to settle a workers' compensation claim that Peddy had brought in connection with the June 5, 2009 workplace accident.[19] The Joint Petition was allegedly approved on January 10, 2018.[20] Defendant further alleges that on January 30, 2018—after Peddy filed the instant complaint in state court but before that complaint was served on defendant[21]—Peddy signed and agreed to the terms of a Receipt, Release, and Indemnity Agreement (the Release).[22] The agreement released defendant from "all liability of any nature whatsoever, whether past, present, or future, . . . including all claims arising under . . . the laws of Louisiana . . . the law of the United States . . . [or] the Louisiana tort law, as a result of the injuries which occurred on or about June 5, 2009."[23] The agreement also contained a provision whereby Peddy agreed to "indemnify, hold harmless, and defend" defendant "from all actions [or] claims . . . by any person . . . that has arisen or may arise, directly or indirectly, out of the injuries" Peddy sustained "due

---

[19] R. Doc. 14 at 10 ¶¶ 5-6.
[20] *Id.* at 11 ¶ 12.
[21] R. Doc. 14-1 at 22 (reflecting that the Release was executed January 30, 2018); R. Doc. 1-1 at 1 (reflecting that defendant was served process on February 2, 2018).
[22] R. Doc. 14 at 12 ¶ 17.
[23] *Id.* ¶ 19; R. Doc. 14-1 at 20.

4

to the accident of June 5, 2009."[24]  Finally, the Release contained a provision prohibiting Peddy from filing any claims against defendant arising from the June 5, 2009 accident.[25]  Defendant asserts in its counterclaim that Peddy has breached the terms of the Release, and that it is entitled to recover its attorneys' fees and costs as damages.[26]  Defendant separately asserts that Peddy is obligated to indemnify it for its attorneys' fees and costs incurred defending this lawsuit, pursuant to the terms of the Release.[27]

On October 9, 2018, Peddy answered defendant's counterclaim.[28] Peddy's answer does not directly admit or deny each of defendant's allegations in the counterclaim.[29]  Instead, Peddy reasserts that she was discharged in violation of the ADA, and that she followed all of the procedures required of her before she could bring this claim.[30]  Peddy "admits" she entered into a settlement agreement, but asserts that the agreement pertained to only the worker's compensation claim against defendant and that it does not prohibit her from bringing this lawsuit.[31]

---

[24]  R. Doc. 14 at 12 ¶ 20; R. Doc. 14-1 at 21.
[25]  R. Doc. 14 at 13 ¶ 21; R. Doc. 14-1 at 22.
[26]  R. Doc. 14 at 15 ¶ 38.
[27]  *Id.* at 16.
[28]  R. Doc. 15.
[29]  *Id.*
[30]  *Id.* at 1 ¶¶ 3-5.
[31]  *Id.* at 2 ¶¶ 6-11.

On November 2, 2018, defendant filed a motion for judgment on the pleadings.[32] Defendant seeks a judgment dismissing Peddy's claims with prejudice, and granting defendant's counterclaims for breach of contract and indemnification.[33] Peddy did not oppose defendant's motion.

## II.  LEGAL STANDARD

A motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) is appropriate if the matter can be adjudicated by deciding questions of law rather than factual disputes. *Brittan Commc'ns Int'l Corp. v. Sw. Bell Tel. Co.*, 313 F.3d 899, 904 (5th Cir. 2002). It is subject to the same standard as a motion to dismiss under Rule 12(b)(6). *Doe v. MySpace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008). To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead enough facts "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when the plaintiff pleads facts that allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A court must accept all well-pleaded facts as true and must draw all reasonable

---

[32]  R. Doc. 18.
[33]  *Id.*

inferences in favor of the plaintiff. *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 239 (5th Cir. 2009). But the Court is not bound to accept as true legal conclusions couched as factual allegations. *Iqbal*, 556 U.S. at 678.

A legally sufficient complaint must establish more than a "sheer possibility" that plaintiff's claim is true. *Id.* It need not contain detailed factual allegations, but it must go beyond labels, legal conclusions, or formulaic recitations of the elements of a cause of action. *Id.* In other words, the face of the complaint must contain enough factual matter to raise a reasonable expectation that discovery will reveal evidence of each element of the plaintiff's claim. *Lormand*, 565 F.3d at 257. If there are insufficient factual allegations to raise a right to relief above the speculative level, or if it is apparent from the face of the complaint that there is an insuperable bar to relief, the claim must be dismissed. *Twombly*, 550 U.S. at 555.

### III. DISCUSSION

As a preliminary matter, the Court must determine whether defendant's motion can be properly adjudicated as a motion for judgment on the pleadings. The pertinent question is whether Peddy's answer to defendant's counterclaim raises a factual dispute that would render a judgment on the pleadings inappropriate, or whether the pleadings present

only legal disputes. *See Brittan Commc'ns*, 313 F.3d at 904. Peddy admits in her answer that she entered into the Release that defendant attached as an exhibit to its counterclaim.[34] She does not allege that the Release is somehow invalid because of fraud, duress, material mistake, or any other defense that the Fifth Circuit has recognized in this context. *See Williams v. Phillips Petroleum Co.*, 23 F.3d 930, 935 (5th Cir. 1994) (listing possible defenses to release of federal claims). Peddy instead simply denies that the language of the Release precludes her from pursuing her claims in this action.[35] The disputes before the Court are therefore (1) whether the Release should be interpreted as prohibiting Peddy's claims, (2) whether Peddy has breached the terms of the Release, and (3) whether the Release's indemnification provision requires Peddy to reimburse defendant for its expenses in defending this litigation. These are questions of contractual interpretation that constitute legal—not factual—disputes, which can be adjudicated in a motion for judgment on the pleadings. *See Reliant Energy*

---

[34] R. Doc. 15 at 2 ¶¶ 6-7. In adjudicating defendant's motion, the Court may consider the agreements defendant attached to its counterclaim. *See* Wright & Miller, 5C *Federal Practice and Procedure* § 1367 (3d ed. 2018) (Rule 12(c) motion can be adjudicated by "focusing on the content of the competing pleadings, exhibits thereto, matters incorporated by reference in the pleadings, whatever is central or integral to the claim for relief or defense, and any facts of which the district court will take judicial notice").

[35] R. Doc. 15 at 2-3 ¶¶ 7-11.

*Servs., Inc. v. Enron Can. Corp.*, 349 F.3d 816, 821 (5th Cir. 2003) ("A determination of whether a contract is ambiguous and the interpretation of a contract are questions of law. . . ."); *Brittan Commc'ns*, 313 F.3d at 904 ("[J]udgment on the pleadings is appropriate only if there are no disputed issues of material fact and only questions of law remain.").

Having answered this preliminary question, the Court will now determine whether the terms of the Release require dismissal of Peddy's claims. The Court finds that they do, and dismisses her claims with prejudice.

The Court must apply federal principles of contractual interpretation to Peddy's release of her federal claims and state law principles to the release of her state claims. *See, e.g.*, *Smith v. Amedisys Inc.*, 298 F.3d 434, 443-44 (5th Cir. 2002) (applying federal law to release of Title VII claims and Louisiana law to release of claims brought under the Louisiana employment discrimination statute and Louisiana tort law). But the federal and state principles that the Court must apply are consistent with one another. Under federal law, when a contract is expressed in unambiguous language, its terms are given their plain meaning and will be enforced as written. *Reliant Energy Servs., Inc.*, 349 F.3d at 822. A contract is ambiguous only if its meaning is susceptible to multiple interpretations. *Id.* at 821-22. Under

9

Louisiana law, a release, or "compromise," "must be interpreted according to the parties' true intent." *Smith*, 298 F.3d at 444 (quoting *Brown v. Drillers, Inc.*, 630 So. 2d 741, 748 (La. 1994)). Like the federal interpretative principles, Louisiana law requires that if the provisions of the compromise are "clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent." *Id.* (quoting *Brown*, 630 So. 2d at 748).

The agreement the parties signed unambiguously releases defendant from liability in this action. It states that defendant is released from

> all liability *of any nature whatsoever, whether past, present, or future*, including . . . wrongful termination from employment, retaliatory discharge . . . and also including . . . *all actions* arising in damages, tort, workers' compensation, including all claims arising under the Louisiana Workers' Compensation Act, the laws of Louisiana, the laws of any State of the United States, or the law of the United States, . . . *as a result of the injuries which occurred on or about June 5, 2009.*[36]

By its clear terms, this provision encompasses any potential liability, pursued by way of any state or federal claim, that arises "as a result of" Peddy's injury.[37] Peddy's disability discrimination and tort claims plainly arise "as a result of" her injuries sustained on June 5, 2009, because she frames her injuries as a "but-for" cause of her claims. She alleges that the

---

[36] R. Doc. 14-1 at 20 (emphasis added).
[37] *Id.*

10

accident caused her to suffer "permanent disabilities,"[38] and that defendant created a hostile work environment and discriminated against her *because* of her disabilities.[39] The Release therefore covers the claims Peddy brings in this lawsuit. *See Garcia v. LumaCorp, Inc.*, 429 F.3d 549, 552-53 (5th Cir. 2005) (work election form releasing employer from "all claims of action . . . that arise out of or are related to injuries" plaintiff sustains at work barred plaintiff's discrimination and state law tort claims against employer after plaintiff was severely injured); *Broussard v. Brown's Furniture of Lafayette, Inc.*, 128 So. 3d 640, 643-44 (La. App. 3 Cir. 2013) (settlement of workers' compensation claim that included waiver of any liability "arising out of or in any way connected with any accidents or injuries" barred later claim in state court). This interpretation is bolstered by the fact that the Release explicitly includes claims for "wrongful termination" and "retaliatory discharge," which are similar to the claims Peddy brings in this lawsuit. By explicitly including these claims, the Release unambiguously covers more than simply tort actions against defendant for the occurrence of the accident, and applies to claims that might arise as a result of Peddy's injuries and disabilities.

---

[38] R. Doc. 1-1 at 4 ¶ 11.
[39] *Id.* at 5-6 ¶¶ 12-19.

Peddy argued in her answer that if the parties had intended to release defendant from this lawsuit, the Release agreement could have specifically "reflected that requirement."[40] This argument is remarkably disingenuous, considering defendant was not yet served with Peddy's complaint when the parties executed the Release.[41] There is thus no indication that defendant was even aware that Peddy had filed this lawsuit before the parties signed the Release. Under these circumstances, it is not surprising that the Release did not include language specifically addressing these claims. More importantly, the Release need not specifically mention Peddy's discrimination and tort claims to release defendant from any liability in this action. *See Smith*, 298 F.3d at 443 ("There is no obligation . . . under Title VII or federal common law, that a release must specify Title VII or federal causes of action to constitute a valid release of a Title VII claim."); *Garcia*, 429 F.3d at 552-53. And as already discussed, the Release specifically states that it encompasses claims similar to the discrimination claims Peddy brings here.[42] In all, because the Release covers all claims arising under "the Laws of Louisiana,"

---

[40] R. Doc. 15 at 2-3 ¶ 11.
[41] R. Doc. 14-1 at 22 (reflecting that the Release was executed January 30, 2018); R. Doc. 1-1 at 1 (reflecting that defendant was served process on February 2, 2018).
[42] *See* R. Doc. 14-1 at 20 (including claims for "wrongful termination from employment" and "retaliatory discharge").

"the law of the United States," and "Louisiana tort law," it covers all of Peddy's claims in this lawsuit.[43]

Next, defendant seeks a judgment on its counterclaims for breach of contract and indemnification.[44] Defendant is entitled to a judgment on the pleadings for its breach of contract counterclaim. When Peddy agreed to release defendant from "all liability of any nature whatsoever" as a result of her June 5, 2009 injuries, she was obligated to cease her pursuit of her claims in this lawsuit.[45] By maintaining this lawsuit after signing the release, Peddy breached that contractual provision. *See Widener v. Arco Oil & Gas Co., Div. of Atl. Richfield Co.*, 717 F. Supp. 1211, 1217-18 (N.D. Tex. 1989) (plaintiff breached release agreement by bringing federal discrimination suit, entitling defendant to "the amount of its costs and attorneys' fees expended in defending th[e] action" (citing *Anchor Motor Freight, Inc. v. Int'l Brotherhood of Teamsters*, 700 F.2d 1067, 1071-72 (6th Cir. 1983))); *see also Lubrizol Corp. v. Exxon Corp.*, 957 F.2d 1302, 1305-06 (5th Cir. 1992) (district court properly awarded defendant its litigation expenses as damages for plaintiff's breach of settlement agreement). Defendant may recover as

---

[43] *Id.*
[44] R. Doc. 18-1 at 6.
[45] R. Doc. 14-1 at 20.

damages its attorneys' fees and the costs it has incurred defending this litigation. *See id.*

Defendant is not entitled to a judgment on the pleadings for its indemnification counterclaim. The indemnification provision in the Release provides, in relevant part:

> "Harmony Peddy[] expressly agrees to indemnify, hold harmless and defend Aaron's Inc. . . . from all actions [and] claims . . . by any person, firm or corporation that has arisen or may arise, directly or indirectly out of the injuries herein described due to the accident of June 5, 2009. . . . [Peddy] further agree[s] to have any such claim . . . investigated, handled, responded to and defended at no cost to the parties released, even if such claim, demand or suit is groundless, false or fraudulent."[46]

Because this provision applies to claims brought by "any person" that "ha[d] arisen" at the time the Release was executed, it could conceivably apply to Peddy's complaint. But the provision does not unambiguously provide that Peddy must indemnify and defend defendant from claims that *she herself* brings. Indemnification provisions are generally used to require the indemnitor to defend the indemnitee against claims brought by third parties. *See, e.g., Soverign Ins. Co. v. Tex. Pipe Line Co.*, 488 So. 2d 982, 984-85 (La. 1986) (discussing a broadly worded indemnification provision in terms of claims by third parties against the indemnitee). Interpreting this

---

[46] *Id.* at 21.

14

provision as defendant does would require Peddy to "investigate[], handle[], respond[] to, and defend[]" against her own claim against defendant.[47] A provision that leads to such an absurd result is ambiguous. *See Smith*, 298 F.3d at 444; *84 Lumber Co. v. Paschen*, No. 12-1748, 2018 WL 1479221, at *3 (E.D. La. Mar. 27, 2018) (ruling that indemnification provision was ambiguous because it would be "absurd to read the contracts as requiring [plaintiff] to *defend* [defendant] against [plaintiff's] own claim" (emphasis in original)). Because the provision is ambiguous, a determination of the parties' intent requires looking to extrinsic evidence outside of the pleadings, and the Court must therefore deny defendant's motion as to its indemnification counterclaim. *See Greenberg v. Gen. Mills Fun Grp., Inc.*, 478 F.2d 254, 256-57 (5th Cir. 1973) (judgment on the pleadings was improper when contract was "facially ambiguous" and "could be clarified only by the introduction of evidence from which the finder of fact could determine the true intent of the parties").

Although the Court denies defendant's motion with respect to its indemnification counterclaim, the Court is awarding defendant the complete relief it seeks by granting its motion with respect to its breach of contract counterclaim. Defendant's pursuit of its indemnification counterclaim

---

[47] *Id.*

would thus be redundant. Accordingly, if defendant does not intend to pursue its indemnification counterclaim further, it is advised to dismiss the claim within 14 days of the entry of this Order, after which the Court will enter a final judgment on the other claims.[48]

## IV. CONCLUSION

For the reasons stated above, defendant's motion for judgment on the pleadings is GRANTED IN PART and DENIED IN PART. Plaintiff's complaint is DISMISSED WITH PREJUDICE.

New Orleans, Louisiana, this __20th__ day of February, 2019.

_____
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE

---

[48] The Court notes that an indemnitee is not entitled to recover its attorneys' fees or costs incurred attempting to enforce an indemnification provision, unless the agreement specifically permits such recovery. *Becker v. Tidewater, Inc.*, 586 F.3d 358, 375 (5th Cir. 2009) (noting that an "indemnitee enjoys no right to recover its legal fees incurred in establishing its right to indemnification").